## No. 10,725.

### D. R. CARROLL VS. GEORGE W. BANCKER ET AL.*

1. Act 64 of 1876, amending Article 163 of the Code of Practice, confers jurisdiction on the courts of this State to enforce a lien or privilege on property within their jurisdiction, notwithstanding the domicile of the debtor, or owner, be elsewhere, but the effect of the decree must be restricted to the property that is proceeded against, or its proceeds.

2. It is no consequence that the property, itself, has not been seized. It is sufficient if it appears to be an action *quasi in rem,* and has for object to define the *status* of designated property, or to determine a lien, or privilege, on it.

3. It is permissible, under the law and jurisprudence, for a citizen of a parish different from the one in which he is cited, to appear and answer to the merits, and by thus voluntarily submitting himself to the jurisdiction of the court, the judgment therein rendered is not *coram non judice.*

4. Whatever may have been the course of judicial opinion under C. P. 288, and R. C. C. 2705 and 2509, it is clear that, under the provisions of Act 66 of 1874, and Act 44 of 1882, amending same, the lien and right of pledge of a factor who makes advances of supplies to a planter is subordinate to the lien of the lessor who rents the land, on the crops produced thereon; and the right of sale which is conferred upon the factor, coupled with the right to appropriate the proceeds thereof to the satisfaction of his claim, can not be so construed as to defeat, or lessen, the privilege of the landlord for rent.

5. When the "effects" of a lessee consist of agricultural products, like sugar and molasses, and same have been pledged under the act of 1874, to a factor for advances of plantation supplies, and afterward consigned to him for sale, his right to appropriate the proceeds is thereby restrained and subjected to the lessor's claim for rent, and same are subject thereto in the factor's hands.

*This opinion was omitted by error in the report of the case, and is now published to supply the omission.—THE REPORTER.

Carroll vs. Bancker et al.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

WATKINS, J. The object of this suit is the enforcement of a lessor's lien upon the proceeds of sugar and molasses produced and manufactured on the leased premises of plaintiff, and alleged to be in the possession of the defendant, Hernandez.

The claim of the plaintiff is that he leased to the defendant, Bancker, for the year 1886, his certain sugar plantation in the parish of St. Martin, for the price of $2500, which became due on the 10th of November of that year. That to secure the payment of the rent, he had a lien and privilege on the crops produced on the leased premises, and as a part of the crops on which his lien rests, he specifies fifty-two hogsheads of sugar and forty-nine barrels of molasses, worth the sum of $2500, that his lessee shipped to Hernandez; and he avers that same, or the proceeds thereof, are in his possession.

A writ of sequestration was obtained, a seizure thereunder demanded by the sheriff, and a denial made on the part of Hernandez of his possession of either the products specified or the proceeds thereof. A rule was taken to traverse the truthfulness of his statement, and some testimony was reduced to writing, but the rule was voluntarily discontinued by plaintiff, and on the same date he filed a supplemental petition, in keeping with the averments of the original petition, making Hernandez a party, and praying a judgment against him for the crops produced or their proceeds.

On the same date counsel for Hernandez filed an exception and answer—both being incorporated in the same paper.

1. No cause of action; no lawful ground for sequestration; petition too vague and indefinite, and the like.

2. That, at the time of demand being made on him he had not, nor has he since had, any sugar or molasses belonging to the defendant nor any proceeds thereof. But he avers that he furnished Bancker with supplies for the cultivation of his crop in 1886, as will be shown by his duly recorded act of pledge, which is annexed and made a part of his answer; and that when said crops were sold he applied the proceeds of sale to his account, as he had a right to do.

He subsequently excepted, further, that he cannot be thus proceeded against, on the ground that there is no suit pending on the *original*

petition against Bancker; and he being a resident citizen of the parish of St. Martin, and " not having voluntarily appeared " therein, and there having been no seizure of his property, the Civil District Court. is without jurisdiction of the matter.

These exceptions were sustained, to the extent of requiring plaintiff to amend the second time, and this was accordingly done. To this amendment Hernandez filed an answer, pleading a general denial; and shortly afterwards, Bancker appeared and filed a similar answer and denial.

This analytical statement of the pleadings was necessary, in order to clear the case of some confusion into which the statement of counsel had involved it.

This case comes clearly within the principle of Act 64 of 1876, which amends the 163d article of the Code of Practice, and confers jurisdiction upon the courts of this State to enforce a lien or privilege on *property* within its jurisdiction, notwithstanding the domicile of the debtor be elsewhere—the operation and effect of the judgment being limited to the value of the property that is proceeded against.

It matters not that the property itself has not been actually seized.

Such a suit is substantially an action *in rem*, and has for object to define the *status* of the property, and to determine an apparent lien upon it. See *Young vs. Upshur*, 42 An. 362, and authorities cited.

In this class of cases we have frequently held, that our courts have jurisdiction to bind the citizens of other States, and to hold them by their judgments, to the extent that their property domiciled here may be affected thereby. · Young vs. Upshur, 42 An. 362; Duruty vs. Musacchia, 42 An. 357.

Independently of these considerations, the suit is chiefly directed against Hernandez, who is a resident citizen of the parish of Orleans, and is to be affected by the decree; and it is not doubted that Bancker has parted with possession of the crops that are sought to be reached thereby in the hands of Hernandez.

Plaintiff does not pretend that Hernandez is bound, in any way, for the payment of the rent, and no personal judgment is asked by him against Bancker.

But it is a complete answer to Hernandez's objections to the jurisdiction of the court, to state that Bancker has submitted himself

thereto. That is conclusive against Hernandez. Phipps vs. Snodgrass, 31 An. 88; Gomilla vs. Milliken, 41 An. 117; C. P. 93.

In so far as the other exceptions of Hernandez are concerned, we need only mention the fact that their being incorporated in his answer is necessarily fatal to them. Robbins vs. Martin, *ante*, p. 488, and cases therein cited.

On the merits, we find the following to be a fair statement of facts, viz. :

That the plaintiff leased his plantation to the defendant, Bancker, as stated, and he has paid no part of the price of the lease, and nothing has been paid him from the proceeds of the sale of the crops produced on the leased premises, and which his lessee had shipped to Hernandez, as his factor, residing in the city of New Orleans— these shipments having been made, for the most part, after plaintiff's rent had become due.

On the 9th of June, 1886, the plaintiff's lessee executed in notarial form an act of pledge in favor of Hernandez, for the sum of $2000, due and payable on the 15th of December, following. In this act it is stipulated that this sum is to cover the amount and value of necessary supplies which were thereafter to be furnished for the " cultivation and raising (of) a crop of sugar and molasses during the present year on *  *  *  a certain sugar plantation situated in the parish of St. Martin *  *  *  belonging to Mr. D. R. Carroll *  *  *  which said plantation is leased by the said Bancker."

It further stipulates that Bancker grants in favor of Hernandez " the lien and privilege recognized by law in favor of furnishers of supplies, and, moreover, pledges and pawns *  *  *  all the crops of sugar and molasses that will be raised on said plantation during the season of 1886-7."

In addition to these stipulations, Bancker specially covenanted and agreed that he would ship to Hernandez, " as soon as ready for market, all the sugar and molasses that he shall grow on said plantation," and that Hernandez was to sell the same for his account and apply the proceeds thereto.

This act was duly registered in the clerk's office of the parish of St. Martin on the date of its execution.

It appears from the transcript that Hernandez rendered to Bancker accounts of sale of certain sugars and molasses which were sold on the 22d, 23d, 26th, 27th and 29th of November and the 1st of Decem-

ber, 1886, respectively, though *none of said accounts were rendered until subsequent to the filing of this suit on December 3, 1886.*

It is admitted that the sugar and molasses Hernandez received from Bancker was so received on the days it was shown to have been sold, and that such dates were the dates of shipments from the plantation.

It appears that Bancker cultivated another plantation, which belonged to his wife and adjoined the Carroll plantation, and to which Hernandez likewise furnished supplies—though this plantation, nor the supplies to be thereto furnished, are made mention of in the act of pledge.

Bancker, as a witness, states that the first shipment of sugar and molasses from his *wife's* plantation was made on the 29th of November, 1886—not more than four barrels prior to that date. That all *previous* shipments had been made from the Carroll place.

The account current filed in evidence by Hernandez shows that subsequent to the 29th of November, the total sales aggregated only $866.42, and, as this sum must be attributed to his account for supplies that were furnished the plantation of Bancker's wife—and with which Carroll has no concern—it must be deducted from the total proceeds of crops received; and making this deduction will give us the following statement, viz.:

The total proceeds of crop.................................................... $2,711 56
Deducted for account of Bancker's plantation ..........................    866 42
                                                                       ——————
    Balance for account of Carroll's plantation ......................  $1,845 14

But inasmuch as Baucker's account shows a total debit of $3606.32, the sum of $866.42 must be subtracted therefrom; and as Hernandez holds other collaterals of Bancker, which are worth approximately $1000, that value must be likewise subtracted therefrom.

Making these alterations, we have this statement, viz.:

Amount to Bancker, debit.......................................................... $3,606 32
Less Bancker's plantation crop ........................... $866 42
Other collaterals.......................................... 1,000 00   1,866 42
                                                                       ——————
    Balance due Hernandez............................................... $1,739 90

On this showing Hernandez is in possession of values to the extent of $105.34 over and above his claim, whereas Carroll, the lessor of Bancker, has received nothing at all.

It further appears that all credits appearing on Hernandez's ac-

count against Bancker, as appertaining to the Carroll plantation, as of dates antecedent to the 22d of November, 1886, only aggregate $817.13, and deducting this sum from the total amount of credits attributable thereto, viz., $1845.14, and we find that $1028.01 is the net amount realized from crops which were shipped from the Carroll plantation *within fifteen days previous to the institution of this suit,* and the notification of plaintiff's writ of sequestration to Hernandez, and the sheriff's demand on him for the crops or their proceeds.

All of the transactions here detailed took place *subsequent* to the maturity of plaintiff's claim, and *prior* to that of Hernandez; and Hernandez, as a witness, admits that the sums shown on his account to have been applied to Bancker's credit, were thus applied *after he had received notice of plaintiff's sequestration,* and that Bancker was subsequently notified thereof.

On this state of facts, the question for solution is, whether Hernandez, holding possession of the crops of Bancker, that were produced by the latter on a plantation under lease from Carroll, and which were consigned to the former as his factor, under bills of lading, had the right, after sale thereof, to apply the proceeds to Bancker's account for supplies furnished, to the prejudice of Carroll's claim for rent. This question appertains, under the foregoing statement, to the proceeds of products which were raised by Hernandez prior to the 22d of November, 1886, viz., $817.13, as the remainder were received and sold within the fifteen-day limit.

While it is fully admitted and conceded by counsel for Hernandez, that under the provisions of Act 66 of 1874, he acquired, by virtue of his act of pledge, a right subordinate to the lessor's lien, on the crop produced on the plantation Bancker leased from Carroll, yet, because of the latter's failure to assert his right against the *crops* affected thereby while they are yet upon the leased premises, or within fifteen days after their removal therefrom, same has lapsed; and that in no event does the landlord's lien extend to *proceeds* derived from the sale of property removed from the premises leased.

It is provided in the Code of Practice, Article 288, that the lessor *may seize even in the hands of a third person objects which are subject to his lien,* if same have been removed by the lessee " within fifteen days previous to his suit being brought," and in R. C. C. 2709 it is provided that " in the exercise of this right, the lessor *may seize the objects* which are subject to it before the lessee takes them away,

or within fifteen days after they are taken away, if they continue to be the property of the lessee, and can be identified."

But our attention has been attracted to an alteration in the textual provisions of the Codes, by Act 66 of 1874 (as amended by Act 44 of 1882), in the following particulars, viz.: That while, under the provisions of Section 1 of the former act, the planter may pledge his growing crop for advances of necessary supplies in favor of a merchant advancing same, yet the effect of such pledge is subordinate to the claim of the landlord for rent of land. That, while under the provisions of Section 2 thereof, the advancing merchant, to whom such agricultural products have been consigned by bill of lading, shall have a right of pledge thereon "from the time the bill of lading thereof shall be put in the mail," and shall confer upon such pledgee the right to sell said products and "to appropriate the proceeds of sale to the payment of the amount due for such advances as may have been made thereon," yet, it is also specially *provided* that nothing (therein) shall be so construed as to defeat or lessen the privileges of * * * landlords in this State * * * for rent," etc.

That while under the provisions of Section 3 of that act, merchants or factors who have a balance of account due them by the planters who consign to them any agricultural products for sale, have a pledge upon the same from the time the bill of lading therefor "is deposited in the mail," and is authorized "to appropriate the proceeds of sale to the payment of the amount due" him, yet it further provides "that nothing herein shall be so construed as to defeat or lessen the privilege of * * * landlords in this State * * * for rent," etc.

The latter act makes no alteration of the former, except to extend the *provisos* contained in Sections 2 and 3 thereof to "*other valid existing privileges or liens.*"

Whatever may have been the course of decision under the cited articles of the Codes, it is clear that under the terms of these statutory enactments, the lien of the factor who makes advances of supplies to a planter is subordinate to that of the lessor who rents the land, on the crops that are thereon produced; and that the right of sale which is conferred upon the factor, coupled with the right to appropriate the proceeds thereof to the satisfaction of his claim, is not to be so construed as to *defeat* or *lessen the privilege of the landlord for rent.*

While, under the provisions of R. C. C. 2705, "the lessor has, for the payment of his rent and other obligations of the lease, a right of pledge on the movable effects of the lessee, *which are found on the property leased;*" and which pledge may, under the provisions of R. C. C. 2709, be exercised against the objects which are subject to it, before they are removed by the lessee from the leased premises, or within fifteen days after they are taken away,—yet, when such "effects" consist of agricultural products, like sugar and molasses, and same have been pledged, under the act of 1874, to a factor for advances of plantation supplies, and are afterward consigned to him for sale, *his right to appropriate the proceeds is thereby restrained, and subjected to the lessor's claim for rent, and same are subject thereto in the factor's hands.*

In the instant case, the act of pledge in favor of Hernandez expressly mentions the plantation to which he contracted to furnish supplies as one Bancker had leased from Carroll, and he can not be permitted to disavow or gainsay the information he thus admitted was in his possession. He is conclusively bound by this admission, made in a *quasi* judicial act. As he was Bancker's factor, and had received his consignment of sugar and molasses, and claims the right to apply the proceeds to his own account, he must have known that Carroll had been paid nothing therefrom, and he was necessarily put upon inquiry as to his rights.

Plaintiff acted promptly and filed his suit, and gave Hernandez notice before his debt against Bancker became due; and, thereafter, pressed his claim vigorously. We are of opinion that plaintiff's right to recover of Hernandez is clear, to the extent of the amount of the proceeds of the sugar and molasses that were produced and manufactured on the land he rented to Bancker, viz., the sum of $1845.14, and legal interest from judicial demand.

It is, therefore, ordered and decreed that the judgment appealed from be annulled and reversed, in so far as it rejects plaintiff's demands against Hernandez, and it is now ordered and decreed that same be so amended as to adjudge and decree that the plaintiff do have and recover from the defendant, Hernandez, the sum of $1845.14, with legal interest from judicial demand; and that, as amended, same be affirmed, at the cost of defendant in both courts.